484 F.Supp. 1240 (1980)
Joseph H. SOLIEN, Regional Director of Region 14 of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,
v.
TEAMSTERS LOCAL NO. 610, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Respondent.
No. 80-143C (4).
United States District Court, E. D. Missouri, E. D.
February 19, 1980.
*1241 John S. Stevens, N. L. R. B., Region 14, St. Louis, Mo., for petitioner.
Barbeau A. Roy, Wiley, Craig, Armbrewster & Mills, St. Louis, Mo., for respondent.

MEMORANDUM
HUNGATE, District Judge.
This matter is before the Court on the petition of the regional director of Region 14 of the National Labor Relations Board for a temporary injunction pursuant to the National Labor Relations Act, 29 U.S.C. § 160(l), and upon this Court's Order to Show Cause why injunctive relief should not be granted.
On February 11, 1980, a hearing was held at which all parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence on the issues and to argue on the evidence and the law.
After full consideration of all the pleadings and evidence filed herein, the oral arguments of counsel and testimony adduced at the hearing, and the applicable law, the Court makes and enters the following findings of fact and conclusions of law.

Findings of Fact
1. Petitioner is regional director of Region 14 of the National Labor Relations Board (hereinafter referred to as the Board) and filed this petition on behalf of the Board.
2. Respondent is Teamsters Local No. 610, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.
3. On January 23, 1980, Tower Hotel, Inc. (hereinafter referred to as Tower) filed a charge with the Board alleging that the respondent has been and is engaging in unfair labor practices within the meaning of the National Labor Relations Act, 29 U.S.C. § 158(b)(7)(A).
4. Petitioner has reasonable cause to believe that:
(a) Respondent is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment or conditions of work.
(b) At all times material herein, Jack Kuper has been a business representative and an agent of the respondent.
(c) Respondent maintains its principal office at 300 South Grand Avenue, in the City of St. Louis and State of Missouri. At all times material herein, respondent has been and is engaged within this judicial district in transacting business and in promoting and protecting the interests of its members.
(d) Tower is a corporation authorized to do business in the State of Missouri. Tower has a place of business located at 4th and Pine Streets in St. Louis, Missouri. At all times material herein, Tower has been engaged in business as an inn. In the operation of its business, Tower annually receives revenues in excess of $500,000 and purchases goods and supplies valued in excess of $50,000, which are shipped to it in the State of Missouri directly from points outside of the State of Missouri.
(e) Respondent is not currently certified by the Board as the collective bargaining representative of any of Tower's employees, *1242 nor has Tower recognized respondent as the representative of any of its employees.
(f) At least since January 1, 1978, Tower has lawfully recognized Hotel and Motel Workers Local 74 (herein called Local 74), a labor organization within the meaning of Section 8(b)(7) of the Act, as the collective bargaining representative of Tower's employees who, in addition to their other duties, operate courtesy cars.
(g) No charge has been filed with the Board under Section 8(a)(2) of the Act alleging that Tower unlawfully recognized or entered into contracts with Local 74, and at no time material herein could a question of representation of Tower's employees who operate courtesy cars appropriately be raised under Section 9(c) of the Act.
5. On or about January 23, 1980, respondent began and has continued to picket, or caused to be picketed, Tower's place of business at 4th and Pine Streets in St. Louis, Missouri.
6. The parties stipulate the signs carried by the pickets state:
NOTICE TO THE PUBLIC
Employees of Holiday Inn, Inc., driving courtesy cars, are not being paid wages or given working conditions comparable to Teamsters limousine drivers.
TEAMSTERS LOCAL 610
This picketing is informational and does not have organization, recognition, work jurisdiction or bargaining as an objective. Employees of this and other employers are not requested to refrain from working or performing services.

Conclusions of Law
1. In this circuit, before an injunction may be issued under the National Labor Relations Act, the trial court must find (1) the Board has reasonable cause to believe that the Act has been violated, and (2) injunctive relief is just and proper. See Hendrix v. Meat Cutters, Dist. Local 340, 555 F.2d 175, 178 (8th Cir. 1977).
2. Respondent argues that there is no reasonable cause to believe that a violation of the Act has occurred. The union picketing, respondent contends, protests the failure of Tower to pay wages within the range of area standards.
3. Area standards picketing is a completely lawful activity. See 29 U.S.C. § 158(b). The peaceful dissemination of information in a public forum is a long cherished, first amendment right. First amendment rights do not depend on the popularity of the person asserting them nor on the majority's approval of the statement made.
Clearly, if the picketing were accompanied by violence or serious economic damage, the outcome might well be different. However, absent such substantial consideration, the picketers' first amendment rights are to be respected.
4. Congress has limited the exercise of a union's first amendment rights in situations defined by the following provisions of the National Labor Relations Act:
It shall be an unfair labor practice for a labor organization or its agents 
. . . . .
to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective-bargaining representative, unless such labor organization is currently certified as a representative of such employees:
. . . . .
where the employer has lawfully recognized in accordance with this Act any other labor organization and a question concerning representation may not appropriately be raised under Section 9(c) of this Act.
29 U.S.C. § 158(b).
5. Petitioner urges the Court to look for the intent of Congress. Petitioner contends *1243 that Congress empowered the agency to pursue investigations of violations of the above-quoted section. Because of the exclusive power given to the agency, petitioner asserts, the Court's sole role is to determine whether or not the director had probable cause to act. The petitioner urges that an injunction must be entered despite any fact-finding by the Court.
6. Searching for congressional intent is akin to a blind man in a dark room looking for a black hat that isn't there. The best of all places to look for congressional intent is in the statute as duly enacted. Gemsco, Inc. v. Walling, 324 U.S. 244, 260, 65 S.Ct. 605, 614, 89 L.Ed. 921 (1945); West v. Bergland, 611 F.2d 710 (8th Cir. 1979).
The statutory language of § 160(l) clearly gives the Court jurisdiction to inquire whether the Board had reasonable cause to believe the Act was being violated as charged. The statutory standard of reasonable cause is satisfied if there is any showing of factual issues which must be resolved by the Board. See Solien v. Steelworkers, 593 F.2d 82, 87 (8th Cir.), cert. denied, ___ U.S. ___, 100 S.Ct. 54, 62 L.Ed.2d 36 (1979); Hotel and Restaurant Employees v. Sperry, 323 F.2d 75 (8th Cir. 1963).
7. Whether or not there are factual issues presented in the case before the Court focuses on the question of whether or not the union picketing was for an organizational or for an informational purpose. Signs carried by the pickets stated:
NOTICE TO THE PUBLIC
Employees of Holiday Inn, Inc., driving courtesy cars, are not being paid wages or given working conditions comparable to Teamsters limousine drivers.
TEAMSTERS LOCAL 610

This picketing is informational and does not have organization, recognition, work jurisdiction or bargaining as an objective. Employees of this and other employers are not requested to refrain from working or performing services. (Emphasis added.)
While picket line patois is not a drawing room derivative, the words and actions employed here were neither profane nor pornographic.
8. Petitioner urges that the union failed to meet its burden of investigating wages and working conditions in defining area standards. However, a statement does not have to be totally accurate to be protected by the first amendment.
9. While area standards for wages and working conditions should encompass more than those comparable to Teamsters drivers, the Court finds that the pickets clearly identified the purpose of disseminating information. Because the object of the picketing was not to gain recognition or organizational rights, the exercise of the union's first amendment rights was not curtailed by the National Labor Relations Act. See Automotive Employees, Laundry Drivers & Helpers, Local No. 88, 208 NLRB 679 (1974).
10. In Mr. Dooley's words, "I care not who makes th' laws iv a nation if I can get out an injunction."
Congress clearly mandated that the rule of law, rather than the rule of men, was to govern in the jurisdictional grant under the National Labor Relations Act. Injunctive relief may issue only if it is just and proper.
11. Freedom of speech is not the sole property of the owners of newspapers and radio and television stations.
As Senator Carl Schurz (R. Mo., 1869-1875) stated,
Democratic Government will be the more successful the more the public opinion ruling it is enlightened and inspired by full and thorough discussion . . . the greatest danger threatening democratic institutions comes from those influences which tend to stifle or demoralize discussion.
Injunctive relief should issue only when justice requires. The Court concludes that this is not a case for such relief.
Petitioner's request for an injunction is denied.