**BURLINGTON NORTHERN RAILROAD COMPANY, Appellee,**

v.

**Gerald D. BAIR, Director of the Department of Revenue of Iowa, Appellant.**

**No. 91–1838.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1991.

Decided Feb. 26, 1992.

Kathleen Allyn, Boise, Idaho, argued (C.A. Daw, on the brief), for appellant.

James McBride, Washington, D.C., argued (Richard Malm, Des Moines, Iowa, on the brief), for appellee.

Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

**1.** Section 306 of the 4–R Act was originally codified at 49 U.S.C. § 26c (1976), but was later recodified, with slight changes in language, at 49 U.S.C. § 11503 under an Act of Oct. 17, 1978, Pub.L. No. 95–473, § 11503, 92 Stat. 1337, 1445–46. The revising act, however, declared that its provisions merely "restate" existing laws and "may not be construed as making a substantive change in the laws replaced." *Id.* § 3(a), 92 Stat. at 1466. As such, the language of section 306 is still controlling and we find it most convenient simply to refer to section 306 in this opinion.

**2.** Section 306 reads in pertinent part:

BEAM, Circuit Judge.

This case concerns an interlocutory appeal from a district court order granting Burlington Northern Railroad Company (BNRR) a preliminary injunction against Gerald D. Bair, Director of the Department of Revenue of Iowa. The injunction prohibits Bair and others from assessing, levying, or collecting certain Iowa property taxes. BNRR claims these actions violate section 306 of the Railroad Revitalization and Regulatory Reform (4–R) Act of 1976, Pub.L. No. 94–210, 90 Stat. 31, 54–55 (codified with some differences in language at 49 U.S.C. § 11503 (1988)).[1] Bair appeals, arguing, among other things, that the district court erred in deciding whether to grant the preliminary injunction by (1) applying a "reasonable cause" standard and (2) considering only BNRR's evidence. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

On July 27, 1990, BNRR filed a complaint against Bair in federal court, seeking a permanent injunction pursuant to section 306 of the 4–R Act,[2] prohibiting Bair and others from collecting the second half of BNRR's 1989 ad valorem taxes for Iowa. BNRR alleged that the taxes, which Bair levied on behalf of Iowa, violated section 306's prohibition against discriminatory taxation of railroads. *See* 4–R Act § 306. The complaint only concerned the second half of BNRR's 1989 taxes because Iowa permits taxpayers to pay ad valorem taxes in two installments and the parties already had entered into a consent injunction re-

[T]he district courts of the United States shall have jurisdiction, without regard to amount in controversy or citizenship of the parties, to grant such mandatory or prohibitive injunctive relief, interim equitable relief, and declaratory judgments as may be necessary to prevent, restrain, or terminate any acts in violation of this section, except that '. . . no relief may be granted under this section unless the ratio of assessed value to true market value, with respect to transportation property, exceeds by *at least 5 per centum* the ratio of assessed value to true market value, with respect to all other commercial and industrial property in the same assessment jurisdiction. 4–R Act § 306.

garding the first installment of BNRR's 1989 taxes.

The second installment of BNRR's 1989 ad valorem taxes was due on or before March 31, 1991. On February 13, 1991, BNRR moved for a preliminary injunction prohibiting collection of the taxes. The district court held a hearing to decide whether to grant BNRR's motion. At the hearing, both BNRR and Bair supported their respective positions with briefs and affidavits. Because we decline to address any factual issues in this opinion, we need not review the specific contents of the various documents.

In deciding whether to grant the preliminary injunction, the district court made two important rulings. First, the court ruled that a "reasonable cause" standard, as opposed to traditional equitable principles,[3] governed the issuance of injunctions under section 306. The district court followed the Tenth Circuit's opinion in *Atchison, T. & S.F. Ry. v. Lennen*, 640 F.2d 255, 260 (10th Cir.1981). Under the reasonable cause standard, the district court does not balance the equities between the parties, but, instead, simply determines whether reasonable cause exists to believe that a violation of the act has occurred. *See id.* at 260–61. Second, the district court ruled that only BNRR's evidence, and not Bair's, was relevant to its determination. Relying on this court's opinion in *Sharp ex rel. NLRB v. Omaha Bldg. & Constr. Trades Council*, 821 F.2d 516, 517 (8th Cir.1987), the district court concluded that under the reasonable cause standard, an injunction should issue if facts exist which reasonably could support the movant's position, even if those facts are in dispute.

After reviewing BNRR's evidence, the district court held that BNRR had presented sufficient facts which could reasonably support its position that the 1989 ad valorem taxes for Iowa violated section 306. The district court, therefore, granted BNRR's motion for a preliminary injunc-

tion. For the reasons discussed below, we affirm the district court's first ruling, but reverse its second one, and remand for a new hearing with directions to consider all the evidence presented by both parties.

## II. DISCUSSION

■ We begin by noting that the district court's decisions to apply a reasonable cause standard and to examine only BNRR's evidence in determining whether to grant BNRR a preliminary injunction under section 306, concern the interpretation and application of a federal statute. As such, our review of the district court's rulings is plenary. *Stevenson v. Stevenson Assocs. (In re Stevenson Assocs., Inc., )*, 777 F.2d 415, 418 (8th Cir.1985).

### A. Reasonable Cause Standard

Bair's initial claim on appeal is that the district court erred in applying a reasonable cause standard as opposed to traditional equitable principles in determining whether to grant BNRR an injunction under section 306. We disagree. Instead, we, like the Ninth Circuit before us, find the Tenth Circuit's analysis in *Lennen* persuasive. *See Trailer Train Co. v. State Bd. of Equalization*, 697 F.2d 860, 869 (9th Cir.), *cert. denied*, 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983) (citing *Lennen*, 640 F.2d at 259–61).

■ It is a well-established rule that where Congress expressly provides for injunctive relief to prevent violations of a statute, a plaintiff does not need to demonstrate irreparable harm to secure an injunction. *See United States v. City of San Francisco*, 310 U.S. 16, 31, 60 S.Ct. 749, 757, 84 L.Ed. 1050 (1940); *Lennen*, 640 F.2d at 259–260 (citing numerous cases). In such situations, it is not the role of the courts to balance the equities between the parties. The controlling issue is whether Congress has already balanced the equities and has determined that, as a matter of

---

**3.** This court outlined the proper equitable considerations for determining whether an injunction should issue in *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109 (8th Cir.1981): "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* at 113.

public policy, an injunction should issue where the defendant is engaged in, or is about to engage in, any activity which the statute prohibits. *See id.* at 259. The proper role of the courts is simply to determine whether a violation of the statute has or is about to occur. *See id.* at 261.

■ Along with the Tenth and Ninth Circuits, we believe section 306 falls within the category of statutes that limit the traditional equitable discretion of the courts. The purpose of the 4-R Act was "to promote the revitalization of [the United States] railway system." 4-R Act § 101(a), 90 Stat. at 33. One of Congress's express policies in the statute was to "balance the needs of carriers, shippers, and the public." *Id.* § 101(b)(1). Congress considered the circumstances surrounding state taxation of railroads and declared that "[t]he levy or collection of any ad valorem property tax on transportation property at a tax rate higher than the tax rate generally applicable to commercial and industrial property in the same assessment jurisdiction" constitutes "an unreasonable and unjust discrimination against, and an undue burden on, interstate commerce." *Id.* § 306, 90 Stat. at 54. Congress, therefore, weighed the potential equities between state and local governments and railroads in enacting the 4-R Act. By expressly providing for injunctive relief in section 306, Congress indicated that, as a matter of public policy, the equities supported such relief where a violation of the act has or is about to occur. The courts are not free to reweigh Congress's balancing of the policy considerations underlying section 306. *See Burlington N. R.R. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 464, 107 S.Ct. 1855, 1861, 95 L.Ed.2d 404 (1987).

Bair urges us to reject the Tenth Circuit's analysis in *Lennen,* arguing that the decision conflicts with the United States Supreme Court's opinion in *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). In *Romero–Barcelo,* the Navy was discharging ordinance into waters surrounding Puerto Rico without a permit as required by the Federal Water Pollution Control Act (FWPCA).

The plaintiffs demanded an injunction, for which the FWPCA expressly provided, to prevent the Navy's continued violation of the statute. *Id.* at 306–07, 102 S.Ct. at 1800. The Supreme Court, however, held that the FWPCA does not require a district court to issue an injunction for every statutory violation, but, instead, allows the court to order relief it considers appropriate to secure compliance with the statute. *Id.* at 318, 102 S.Ct. at 1806. The Court emphasized that the FWPCA provided for a variety of remedies, including criminal fines and penalties as well as injunctions, and that the illegal discharge did not actually harm the quality of the water. The Navy's conduct, therefore, only violated a technical requirement of the FWPCA, not its underlying purpose. *Id.* at 314–15, 102 S.Ct. at 1804–05.

*Romero–Barcelo* held that a statute that expressly provides for equitable relief does not automatically restrict a district court's traditional equitable discretion. The Supreme Court recognized, nonetheless, that the Congress may impose such restrictions, either explicitly in the statute's text or implicitly in its scheme. *Id.* at 313. As an example, the Court discussed its opinion in *Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). In *Hill,* the Supreme Court held that under the Endangered Species Act (ESA), a district court had to issue an injunction prohibiting the completion of a dam that threatened to eliminate an endangered species, the snail darter, by destroying its critical habitat. *Id.* at 194, 98 S.Ct. at 2301. The *Romero–Barcelo* Court distinguished *Hill* by noting that the ESA contained a flat ban on the destruction of critical habitats, which represented a direct policy choice by Congress, and under the circumstances, only an injunction would have prevented a violation of the ESA's fundamental purpose. The ESA's language and statutory scheme, therefore, restricted the district court's equitable discretion and the court had no choice but to issue an injunction. *Romero–Barcelo,* 456 U.S. at 314, 102 S.Ct. at 1804.

We believe that Bair's comparison between the 4–R Act and the FWPCA is inapposite. If any comparison is proper, it is between the 4–R Act and the ESA. Section 306 contains a flat ban on discriminatory taxation of railroads and the only form of relief available to prevent a violation of this ban is equitable. Moreover, a state that levies a discriminatory tax is not merely violating a technical provision of section 306; it is violating the very purpose of the section. As such, we do not agree with

Bair's assertion that *Romero–Barcelo* undermines the analysis contained in *Lennen* and similar cases. On the contrary, we believe that the analysis of *Romero–Barcelo* supports *Lennen*'s holding.

Consequently, we conclude that a district court should grant a preliminary injunction under section 306 where a plaintiff has shown reasonable cause for the court to believe that a violation of the section has or is about to occur.[4]

**4.** The *Lennen* court adopted the phrase "reasonable cause" by analogizing section 306 to sections 10(j) and 10(*l*) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(j), (*l*) (1988) (as amended by Labor Management Relations Act, 1947, ch. 120, § 101, 61 Stat. 136, 149–50), which authorize district courts to enjoin, at the request of the National Labor Relations Board, alleged violations of the NLRA. *See Lennen,* 640 F.2d at 260. Courts generally have held that a preliminary injunction should issue under sections 10(j) and 10(*l*) where reasonable cause exists to believe that certain unfair labor practices have occurred. *See, e.g., id.* (citing cases from various circuits).

The Eighth Circuit, in particular, has held that an injunction should issue under sections 10(j) and 10(*l*) where (1) reasonable cause exists to the believe that a violation of the NLRA has occurred and (2) injunctive relief is just and proper. *See Minnesota Mining & Mfg. Co. v. Meter ex rel. NLRB,* 385 F.2d 265, 269 (8th Cir.1967) (section 10(j)); *Local Joint Bd., Hotel & Restaurant Employees & Bartenders Int'l Union v. Sperry,* 323 F.2d 75, 77 (8th Cir.1963) (section 10(*l*)).

Bair contends that a comparison between the NLRA and the 4–R Act is inappropriate because the Eighth Circuit standards for granting injunctions under sections 10(j) and 10(*l*) actually differ. According to Bair, *Sperry* adopted the reasonable cause standard under section 10(*l*), but *Minnesota Mining* rejected this standard in favor of traditional equitable principles under section 10(j). He explains the distinction by noting that section 10(j) does not contain the words "reasonable cause," while section 10(*l*) does. *Compare* NLRA § 10(j) *with id.* § 10(*l*). Finally, Bair infers that because section 306 also does not contain the words "reasonable cause," if any section of the NLRA should serve as a guide, it should be section 10(j), not section 10(*l*).

Bair's analysis is flawed. *Minnesota Mining* does not reject reasonable cause as part of the standard for issuing injunctions under section 10(j). *Minnesota Mining* simply holds that reasonable cause alone is insufficient; injunctive relief also must be just and proper considering all the facts and circumstances of the case. *Minnesota Mining,* 385 F.2d at 269. In theory, this two-pronged standard is no different than

the one contained in *Sperry*. In fact, the *Minnesota Mining* court cited *Sperry* in outlining the standard to be applied under section 10(j) and expressly noted that the standards applied under sections 10(j) and 10(*l*) are the same. *Id.* at 269 & n. 5. In practice, though, *Minnesota Mining* did consider traditional equitable principles, such as irreparable harm, in determining whether injunctive relief was just and proper. This interjection of traditional equitable principles into the just and proper prong appears to be an anomaly. The majority of other decisions have applied the prong far more narrowly. *Compare Minnesota Mining,* 385 F.2d at 272–73, *with Sperry,* 323 F.2d at 78–79; *Wilson ex rel. NLRB v. Milk Drivers & Dairy Employees Union, Local 471,* 491 F.2d 200, 203 (8th Cir.1974) (citing *Minnesota Mining*); *Hendrix ex rel. NLRB v. Amalgamated Meat Cutters & Butcher Workmen, Dist. Local 340,* 555 F.2d 175, 178 (8th Cir.1977); *Solien ex rel. NLRB v. United Steelworkers,* 593 F.2d 82, 86–87 (8th Cir.), *cert. denied,* 444 U.S. 828, 100 S.Ct. 54, 62 L.Ed.2d 36 (1979); *Sharp ex rel. NLRB v. Omaha Bldg. & Constr. Trades Council,* 821 F.2d 516, 517–18 (8th Cir.1987).

We, however, need not resolve the potential inconsistency in the application of sections 10(j) and 10(*l*). Unlike these sections, section 306 contains no language granting the district court discretion to determine whether injunctive relief is "just and proper." Instead, section 306 directs the court to issue whatever injunctive relief "as may be necessary" to prevent a violation of the section. *Compare* NLRA § 10(j), (*l*) *with* 4–R Act § 306. The just and proper prong of the standard under sections 10(j) and 10(*l*), therefore, does not serve as a guide in interpreting section 306.

Moreover, we note that the comparison between section 306 and sections 10(j) and 10(*l*) is nothing more than a helpful analogy. As the result of litigation concerning sections 10(j) and 10(*l*) (section 10(*l*) in particular), the reasonable cause prong of the standard for issuing injunctions under these sections has become a well-developed alternative to traditional equitable principles. We adopt the reasonable cause prong as the alternative standard in the section 306 context because it is appropriate, not because our interpretation of sections 10(j) and 10(*l*) compels us to do so.

### B. Relevant Evidence

■ Bair's next contention is that the district court erred in failing to consider his evidence when determining whether reasonable cause existed to believe that Iowa's 1989 ad valorem taxes levied against BNRR violated the 4–R Act. We agree. The district court's reliance on the conclusory language of *Sharp ex rel. NLRB v. Omaha Bldg. & Constr. Trades Council,* 821 F.2d 516 (8th Cir.1987), is misplaced. In *Sharp,* this court held that a district court should examine only evidence presented by the petitioner in applying the reasonable cause standard under section 10(*l*) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(*l*) (1988) (as amended by Labor Management Relations Act, 1947, ch. 120, § 101, 61 Stat. 136, 149–50). *Sharp,* 821 F.2d at 517. Section 10(*l*) permits the National Labor Relations Board (NLRB) to petition a district court for a preliminary injunction prohibiting certain alleged unfair labor activities pending the NLRB's final resolution of the dispute. NLRA § 10(*l*).[5] The fundamental basis for *Sharp*'s holding, however, is contained in earlier opinions. A brief review of these opinions reveals that the underlying reason for examining only the petitioner's evidence in applying the reasonable cause standard under section 10(*l*) does not apply under section 306.

■ The *Sharp* court relied primarily on two earlier Eighth Circuit decisions, *Hendrix ex rel. NLRB v. International Union of Operating Eng'rs, Local 571,* 592 F.2d 437 (8th Cir.1979), and *Solien ex rel. NLRB v. United Steelworkers,* 593 F.2d 82 (8th Cir.), *cert. denied,* 444 U.S. 828, 100 S.Ct. 54, 62 L.Ed.2d 36 (1979). In *Hendrix,* we emphasized that in applying the reasonable cause standard under section 10(*l*), the district court must defer to both the statutory interpretations and rational factual inferences of the NLRB. *Hendrix,* 592 F.2d at 442. In *Solien,* we reaffirmed our basic view that the role of the district court

under section 10(*l*) is very limited. We held that this role does not extend to resolving the underlying dispute between the NLRB and the other party, but merely to examining whether the NLRB has reasonable cause to believe that a violation of the NLRA has occurred. *Solien,* 593 F.2d at 86–87.

In reaching its conclusion, the *Solien* court quoted from our decision in *Hendrix ex rel. NLRB v. Amalgamated Meat Cutters & Butcher Workmen, Dist. Local 340,* 555 F.2d 175, 178 (8th Cir.1977), which in turn quoted from our decision in *Wilson ex rel. NLRB v. Milk Drivers & Dairy Employees Union, Local 471,* 491 F.2d 200, 203 (8th Cir.1974). In *Wilson,* we explained that the district court must defer to the NLRB under section 10(*l*), because the determination of whether a violation of the NLRA actually has occurred "is reserved exclusively for the [NLRB] with review by the Court of Appeals." We expressly noted that an injunction under section 10(*l*) may be proper even where substantial conflict in the evidence exists. *Id.*

The *Wilson* court relied on an earlier decision as well, *Local Joint Bd., Hotel & Restaurant Employees & Bartenders Int'l Union v. Sperry,* 323 F.2d 75 (8th Cir. 1963), in which we first adopted the reasonable cause standard under section 10(*l*), *see id.* at 77. In *Sperry,* we noted that any attempt by the district court to finally adjudicate whether a violation of the NLRA actually had occurred would " 'usurp the [NLRB's] function as the primary fact finder in cases arising under the [NLRA] and its function as primary interpreter of the statutory scheme.' " *Id.* at 77 (quoting *Schauffler ex rel. NLRB v. Local 1291, Int'l Longshoremen's Ass'n,* 292 F.2d 182, 188 (3d Cir.1961)).

*Sharp*'s holding, consequently, ultimately rests on the principle that the district court must defer to the NLRB on disputed matters under section 10(*l*) because the NLRB, not the district court, is the final

---

**5.** The standard for issuing injunctions under section 10(*l*) is actually two-fold: (1) reasonable cause must exist to believe that a violation of the NLRA exists and (2) injunctive relief must be just and proper. *Sharp,* 821 F.2d at 517. Only the reasonable cause prong of the standard concerns us here. *See supra* note 4.

adjudicator of disputed fact issues under the NLRA. This deference to an administrative agency's authority, not any inherent aspect of the reasonable cause standard, explains why the district court examines only the petitioner's evidence when applying the reasonable cause standard under section 10(*l*). As discussed above, the reasonable cause standard flows from Congress's decision to expressly authorize injunctive relief in an act. Deference to the petitioner under an act such as the NLRA, in contrast, stems from Congress's decision to grant primary fact-finding authority to the petitioner and not the court. The district court's reliance on *Sharp*, thus, is misplaced because unlike under the NLRA, the district court is the primary fact-finder under the 4–R Act. *See* 4–R Act § 306. As fact-finder, the district court does not owe special deference to the petitioner and, therefore, should consider all the evidence in applying the reasonable cause standard under section 306.

 A simple analogy between proceedings under the NLRA and those under the 4–R Act, further clarifies that the district court, as fact-finder under the 4–R Act, should consider evidence from both parties before deciding whether to grant a preliminary injunction.[6] The NLRB, as fact-finder under the NLRA, presumably considers all the evidence available to it before deciding whether to seek a preliminary injunction. The NLRB then petitions the district court when it decides, after a preliminary investigation, that reasonable cause exists to believe that a violation of the NLRA has occurred. *See* NLRA § 10(*l*). The NLRB goes to the district court because it has no authority to issue an injunction on its own. The district court's role under section 10(*l*), therefore, is largely limited to granting injunctions where the NLRB's decision has a rational basis.[7] Thus, the court only examines the

NLRB's evidence in determining whether reasonable cause exists. *See Sharp*, 821 F.2d at 517. Under section 306 of the 4–R Act, however, the district court has authority to find facts as well as grant injunctions. *See* 4–R Act § 306. The district court's role as fact-finder under the 4–R Act is directly comparable to the NLRB's role as factfinder under the NLRA. Just as the NLRB does under the NLRA, the district court should consider all the evidence available to it before deciding whether reasonable cause exists to believe that a violation of the 4–R Act has occurred.

### III. CONCLUSION

Bair also raises various factual issues on appeal, but because we reverse the district court's ruling that it should only consider BNRR's evidence in deciding whether to grant a preliminary injunction, our examination of Bair's factual claims would be premature. We instead remand the case to the district court for further proceedings consistent with this opinion.

---

**6.** BNRR contends that its position under section 306 is analogous to the NLRB's position under section 10(*l*). As this paragraph demonstrates, BNRR's analogy is seriously flawed. Its position is more comparable to that of a party who initially files a complaint with the NLRB, alleging that an unfair labor practice has occurred.

**7.** Although the district court also has discretion to determine whether injunctive relief is just and proper, this discretion is limited in practice. *See supra* note 4.