COLUMBIA TRANSIT CORPORATION, a Minnesota Corporation formerly known as Capitol Transit, Inc., to its own use and to the use of the National Labor Relations Board, Appellant,

v.

Ernest H. JONES, Director of the Bureau of Mediation Services of the State of Minnesota, Bureau of Mediation Services of the State of Minnesota, Robert J. Wilson, Regional Director of the National Labor Relations Board, and the National Labor Relations Board, Appellees.

No. 77–1651.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1978.

Decided March 8, 1978.

Norman R. Buchsbaum, James E. Carbine and Carl S. Silverman (argued) Baltimore, Md., Larry A. Hanson, St. Paul, Minn., on brief for appellant.

Richard A. Lockridge, St. Paul, Minn., for State, argued, for appellees; Linda Auerbach, N.L.R.B., Washington, D. C., for Labor Board.

Before BRIGHT and HENLEY, Circuit Judges, and Talbot Smith, Senior District Judge.*

HENLEY, Circuit Judge.

This labor relations case was brought by plaintiff-employer, Columbia Transit Corporation, in the United States District Court for the District of Minnesota for the purpose of blocking or at least delaying the certification of Amalgamated Transit Union, AFL–CIO–CLC (hereinafter Union) by the Minnesota Bureau of Mediation Services (Bureau) as the collective bargaining agent for plaintiff's numerous employees. Named as defendants were the Bureau, its current Director, Ernest H. Jones (Director), the National Labor Relations Board (Board) and Robert J. Wilson, Regional Director of the Board's Eighteenth Region. The Union was not named as a party defendant and has not sought to intervene in the case.

Plaintiff sought to delay further proceedings in connection with a representation petition that the Union had filed with the Bureau in March, 1976 at least until the Board had finally passed on what is called an "RM" petition that plaintiff had filed with the Board under § 9(c)(1)(B) of the National Labor Relations Act (NLRA) shortly after the Union had filed its petition with the Bureau. In the RM petition filed with the Board the Union was named as respondent. The parties have referred to the proceedings before the Bureau as the "state case," and to the proceeding before the Board as the "federal case." We will do likewise.

Plaintiff based federal subject matter jurisdiction on the NLRA and on 28 U.S.C. § 1337 which confers on the district courts jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

As to the Bureau and its Director, plaintiff sought declaratory and temporary and permanent injunctive relief. As to the federal defendants, plaintiff sought to require them to come into the case for the purpose of protecting the alleged exclusive jurisdiction of the Board with respect to some of plaintiff's employees. The case was assigned to Chief District Judge Edward J. Devitt, and at an early stage he denied plaintiff's application for a temporary restraining order. Later, after a hearing Judge Devitt denied plaintiff's application for a preliminary injunction, and in that connection filed a full opinion which is part of the record before us. Still later, the Judge granted defense motions for summary judgment on the merits and entered a formal judgment dismissing the complaint in its entirety. Plaintiff has appealed from that judgment; it does not appear that plaintiff ever undertook to appeal from the order of the district court denying plaintiff's application for a preliminary injunction, although that order would have been appealable under 28 U.S.C. § 1292(a).

We have given careful consideration to the materials before us, and we affirm the judgment of the district court.

* The Honorable Talbot Smith, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

## I.

When the district court denied plaintiff's application for a temporary restraining order under Fed.R.Civ.P. 65(b), it also denied the application of plaintiff for an order compelling the Board and its Regional Director to intervene in the case. And, as has been seen, the district court also dismissed the case ultimately as to both the state defendants and federal defendants.

Although the district court did not formally discuss the effort of plaintiff to bring the Board and the Regional Director into the case against their will, we think that the decision of the district court was clearly correct.

The relief against the federal defendants sought by plaintiff was in the nature of a petition for a writ of mandamus. Under the provisions of 28 U.S.C. § 1361 a district court has jurisdiction "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." That relief is available, however, only where the act which the officer, employee or agency refuses to perform is ministerial in nature, and the statute does not reach administrative decisions which are discretionary. *Rural Electrification Administration v. Northern States Power Co.*, 373 F.2d 686, 694–95 (n. 14), (8th Cir.), *cert. denied*, 387 U.S. 945, 87 S.Ct. 2079, 18 L.Ed.2d 1332 (1967).

■ Although the Board might have intervened in the case or directed its Regional Director to do so had the Board chosen to take that course, we think that the question of intervention *vel non* was within the discretion of the agency, and that the district court had no power to compel either the Board or the Regional Director to come into the case. *Cf. National Labor Relations Board v. Nash-Finch Co.*, 404 U.S. 138, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971); *Wilmot v. Doyle*, 403 F.2d 811, 816 (9th Cir. 1968).

As counsel for the federal defendants point out, and as will more fully appear in the next section of this opinion, there is as yet no real conflict between the jurisdiction of the Board and the jurisdiction of the Bureau, although plaintiff may well have tried to create one. Such a conflict may never arise; but if it does the Board can and doubtless will take appropriate steps to protect its jurisdiction from infringement by the state agency.

## II.

As to the state defendants, we affirm the final judgment of the district court largely on the basis of the reasoning that Judge Devitt set out in his opinion denying plaintiff's motion for a preliminary injunction.[1] We find it necessary, however, to state the underlying facts and procedural history of the case in some detail.

Plaintiff is a Minnesota corporation with its principal place of business in the City of St. Paul. It is engaged in the business of transporting persons by motor bus, and the great bulk of its business consists of the transportation of children to and from school under contracts with local Minnesota school districts and parochial school authorities in the Minneapolis-St. Paul-Minnetonka area. Plaintiff performs some transportation services that are not school district related. Most of plaintiff's employees are bus drivers, but plaintiff hires a number of employees in other categories. Some employees are dual purpose employees in the sense that part of their work is school district related and part is not so related.

The Bureau is the state agency which administers the collective bargaining provisions of the Minnesota Labor Relations Act, Minn.Stats.Ann. §§ 179.01 *et seq.*, and the Minnesota Public Employees Labor Relations Act of 1971, Minn.Stats.Ann. (Cum. Supp.) §§ 179.61 *et seq.* Those statutes roughly parallel the NLRA and extend to employees who are not covered by that Act. Unlike the federal statute, the Minnesota statute last mentioned grants collective bargaining rights to employees of the State of

---

1. Counsel for plaintiff complain about the action of the district court in refusing to grant a preliminary injunction. As has been stated, however, plaintiff did not appeal from the order of denial and final judgment adverse to plaintiff has now been entered.

Minnesota and its political subdivisions, including school districts. As is well known, the NLRA does not apply to the states or to political subdivisions thereof. NLRA § 2(b), 29 U.S.C. § 152(2).[2]

The parties have stipulated as to the administrative history of the case both before the Bureau and before the Board, and those facts may be summarized as follows.

The Union filed its application with the Bureau on March 3, 1976. At that time the Director of the Bureau was Charles A. Swanson who was succeeded later in the year by Director Jones.

On March 19, 1976 Director Swanson set a hearing on the Union's application for April 1, 1976.

Three days before the date set for that hearing plaintiff filed its RM petition with the Board which was docketed as 18–RM–956, *Columbia Transit Corporation v. Amalgamated Transit Union, AFL–CIO–CLC*. When Director Swanson was notified of the filing of the RM application with the Board, he agreed to take no further action in the state agency proceeding until the Board should act on the RM petition.

In the petition filed with the Board plaintiff did not assert that its employees or any of them were subject to the Board's jurisdiction. On the contrary, plaintiff took the position that none of its employees was subject to Board jurisdiction. In that connection it contended that for certain reasons it was not an industry engaged in or affecting interstate commerce. Additionally, and perhaps alternatively, plaintiff contended that its services for the Minnesota school districts were so closely regulated by state authorities that plaintiff should be considered as a "public employer," and entitled to the NLRA's exemption or exclusion of such employers from coverage.

After a hearing conducted by a hearing officer designated by the Regional Director the record in the case was considered by a three member panel of the Board. The panel decision was rendered on November 8, 1976, and is reported as 226 NLRB No. 115 (1976).

A majority of the panel held that plaintiff was entitled to be treated as a public employer with respect to the majority of its employees, mostly bus drivers, but the majority found that a small number of dual purpose employees were subject to the jurisdiction of the Board. The third member of the panel filed a dissenting opinion in which he took the view that all of plaintiff's employees were covered by the NLRA, and that the Board should assume jurisdiction with respect to all of them.

The majority held that a bargaining unit should be defined with respect to employees subject to the jurisdiction of the Board, and that a representation election should be held on December 8, 1976. The unit was to include "drivers and yard workers performing both nonschool district-related and school district-related bus services . . . if they perform nonschool district-related bus services for sufficient periods of time to demonstrate that they have a substantial interest in the unit's working conditions."

The bargaining unit was formally defined as being made up of "All school bus drivers and yard workers employed by the Employer at the Arden Hills and St. Paul school bus terminals who are engaged in providing nonschool district-related bus services; but excluding all other employees, professional employees, guards and supervisors as defined in the Act."

That definition of the bargaining unit was admittedly imprecise as far as individu-

---

**2.** We accept, at least for present purposes, the underlying thesis of the plaintiff that in areas where the federal statute applies Congress has preempted the field and that labor relations that are subject to the jurisdiction of the Board cannot be regulated or interfered with by state courts or agencies. *See, e. g., Motor Coach Employees v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); *San Diego Build-ing Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); and *Bethlehem Steel Co. v. New York State Labor Relations Board*, 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234 (1947). And there is nothing before us to suggest that the state agency with which we are concerned disputes the proposition just stated.

al employees were concerned, and it appears to have been the intention of the Board to leave to later determination, probably by the Regional Director and his staff, the question of just which employees were included in the unit and entitled to vote in the election.

It will have been observed that the decision of the Board refers to the Arden Hills and St. Paul bus terminals. The record indicates that substantially prior to the rendition of that decision plaintiff had acquired a third bus terminal and obviously had also acquired additional employees. Plaintiff did not call those facts to the attention of the Board until after the agency decision had been rendered.

On November 16, 1976 plaintiff filed a motion with the Board requesting it to reopen the case on the basis of the acquisition of the third terminal and to send the case back to the Regional Director for further proceedings. That motion caused the Board to cancel the election scheduled for December 8 and to direct a show cause order to the Union which was opposing the reopening of the case.

By December 30, 1977 Director Swanson of the Bureau had been replaced by Director Jones, and on that date he set a hearing in the state case for January 20, 1977. On January 3 plaintiff requested the Director to hold up action in the state case until the Board should pass on the motion to reopen the federal case. That request was denied on January 10.

On the same day plaintiff notified the Board that plaintiff was about to file suit in the district court against the state defendants, and plaintiff requested the Board to participate in the litigation, which the Board declined to do.

On January 14 this suit was filed in the district court, and on January 19 Judge Devitt denied plaintiff's motion for a temporary restraining order.

The filing of the suit and the application for a temporary restraining order seem to have blocked the holding of the hearing in the state case in January, 1977, but it was held in mid-April. In the course of the hearing a dispute arose as to whether forty-seven individual employees of plaintiff were subject to the jurisdiction of the Bureau or whether they were subject to the jurisdiction of the Board under its November, 1976 decision.

On May 4, 1977 the Director issued a "Unit Determination" and called for a representation election to be held at all three of plaintiff's terminals. May 17 was set as the date of the election.

The Director determined that 394 of plaintiff's employees were entitled to vote, including thirty-eight employees whom plaintiff claimed fell within the bargaining unit established by the Board. The Director also held that eighty employees recently hired by plaintiff had been employed too late to be eligible to vote, and the Director refused to permit ballots to be cast by mail as had been requested by plaintiff.

It was thereafter that plaintiff filed its motion for a preliminary injunction. After that motion was denied, the election was held on schedule. The result was 187 votes in favor of the Union; 96 against the Union; 21 challenged votes; 2 blank ballots and 3 void ballots.

On May 27, 1977 plaintiff filed a protest with respect to the election with the state agency, and that protest would appear to have been pending when Judge Devitt finally dismissed the entire case on June 21.

To complete the story, in August, 1977 a majority of the Board refused to reopen the 1976 decision on the ground that plaintiff should have called the Board's attention to the acquisition of the third bus terminal sooner than it did. The brief of the federal defendants which was filed on December 5, 1977 states "To date, the Board has not conducted the election. Scheduling of the election has been delayed pending the Board's disposition of the Company's motion to extend the eligibility date for voting."

We now return to the ultimate question before us which is whether the district

court erred in granting summary judgment in favor of the defendants. It should be kept in mind that the question of whether in a given case a plaintiff is entitled to either temporary or permanent injunctive relief or declaratory relief is one that to a degree addresses itself to the judicial discretion of the trial court, and, further that a plaintiff who seeks an injunction must demonstrate that he has no adequate remedy at law and will suffer irreparable harm if injunctive relief is not granted.

In passing upon the plaintiff's motion for a preliminary injunction Judge Devitt characterized the controversy as actually involving the thirty-eight individual employees whom the Director found to be within the jurisdiction of the state agency and whom plaintiff claimed were within the jurisdiction of the Board; the district judge was of the view that the plaintiff's problem was one of overlapping of the jurisdiction of two regulatory agencies, and that the problem was entirely potential and not immediate. The judge concluded that plaintiff had not shown that it would sustain irreparable harm if the preliminary injunction was not granted. In that connection the opinion states:

> . . . First, it should be emphasized that in two different ways this problem is potential only. The Board might well conclude that these employees are properly within the school driver unit. If not, then the Bureau has indicated its willingness to restructure the unit to account for their exclusion by the Board. Moreover, if the margin of victory for either the union or the employer is more than the number of disputed members of the unit, the jurisdictional problem will become irrelevant. Second, if a conflict persists, then plaintiff has an adequate remedy at law—it can challenge the make-up of the bargaining unit in the state courts after the election. Plaintiff has suggested that the existence of this relief is questionable but has offered no explanation, plaintiff's memorandum, page 15. [Footnote omitted.] In summary, this election, which was duly ordered after administrative proceedings involving all interested par-

ties, should not be delayed due to potential problems touching upon only 10 percent of the bargaining unit. If problems do arise, they can be resolved in later proceedings.

> Since plaintiff has failed to demonstrate irreparable harm which will occur absent the issuance of a preliminary injunction, its motion is DENIED. . .

In a footnote which we have omitted from the preceding quotation the district court recognized the reliance placed by plaintiff on *Linde Air Products Co. v. Johnson,* 77 F.Supp. 656 (D.Minn.1947), wherein it was held that an injunction would lie against the Minnesota state officer who was then known as the Labor Conciliator to prohibit him from going forward in a certification proceeding in which it was clear that the federal Board had exclusive jurisdiction, and that the employer should not be required to seek judicial review of the Conciliator's actions in the Minnesota courts by means of a writ of certiorari issued out in the Supreme Court of Minnesota. Judge Devitt distinguished that case from this one, however, on what we consider to be the valid basis that in *Linde* all of the non-exempt employees of the plaintiff were within the exclusive jurisdiction of the Board whereas in the instant case the Board has determined that the great majority of plaintiff's employees are within the jurisdiction of the state agency or at least are not within the jurisdiction of the Board.

It will be recalled that when the district court denied the application for a preliminary injunction the election called by the state agency had not been held, and the Board had not passed on plaintiff's application for a reopening of the November, 1976 decision of the Board. In that situation we think that the district court correctly denied the motion for preliminary injunctive relief, and we do not consider that the situation had changed in any controlling respect when summary judgment in favor of the defendants was granted on June 17, 1977.

True, the election had been held, and the plaintiff had lost it. But an election con-

test was pending before the state agency, which contest probably involved not only the thirty-eight controversial employees who had been permitted to vote, but also the eighty employees who had not been permitted to vote and which also probably involved the refusal of the Director to permit ballots to be cast by mail. And, the Board had still not passed on plaintiff's application for a reopening of the Board's 1976 decision.

In other words, as of the date of the final judgment of the district court plaintiff's problems were before two administrative agencies, neither of which had manifested any inclination to interfere with the jurisdiction of the other or to subject plaintiff to a cross-fire of conflicting claims of jurisdiction. Plaintiff might well have gained adequate relief through the administrative process (and may do so yet if it is entitled to any relief) or by direct judicial review of adverse administrative actions.[3]

We hold that in such circumstances the district court did not err or abuse its discretion in denying relief to the plaintiff and that its action in granting summary judgment in favor of the defendants was proper.

Affirmed.

Ross, Circuit Judge, filed a concurring opinion.

---

**3.** The district court, of course, had no jurisdiction to review the determination of the Board that it had jurisdiction of some but not all of plaintiff's employees.