No. 95-2426

Jonathan D. Brown; Deborah B.          *
Billow; Nancy B. Brown;                *
Gretchen A. Brown,                     *
                                       *
                                       *    Appeal from the United States
          Appellants,                  *    District Court for the
                                       *    Western District of Missouri.
     v.                                *
                                       *
United Missouri Bank, N.A.;            *
Thomas Brown,                          *
                                       *
          Appellees.                   *

_____

Submitted:  January 11, 1996

Filed:  March 12, 1996
_____

Before WOLLMAN, ROSS, and MURPHY, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

This is an appeal from the district court's grant of summary judgment
to defendants on two claims and judgment as a matter of law (JAML) on the
remaining claims following opening statements, in this diversity action.
We reverse and remand for trial.

**I.**

Prior to his death, Maurice Brown (Maurice) created two trusts from
his estate.  Maurice's third wife, Virginia, was the income beneficiary of
the first trust, referred to as the QTIP trust, and the appellants,
Maurice's children (the Brown children), were the remaindermen.  The Brown
children were also the beneficiaries of the second trust, referred to as
the residual trust.  Maurice and United Missouri Bank (UMB) were co-
trustees during Maurice's life, although Maurice could conduct any business
on his own as long as

he was competent, and UMB became the sole trustee after Maurice's death. One of the trust assets was the Maurice L. Brown Company, which Maurice sold to Petroleum Resources Management, Inc. (Petroleum Resources) in 1983. The Maurice L. Brown Company was renamed Petroleum Production Management, Inc. (Petroleum Production). As part of the sale proceeds, Maurice received a promissory note with a face value of $2.5 million, secured by junior mortgages on properties owned by Petroleum Production. Petroleum Resources later issued an additional promissory note for $750,000. These notes were allocated to the residual trust.

After the sale of his company, Maurice was diagnosed with brain cancer, and his health deteriorated significantly in 1988. By November 1988, he had lost his eyesight, and on December 3, 1988 he began taking Roxanol, a liquid morphine. At a meeting held December 13, 1988, Maurice released his security interest in the Petroleum Production properties so they could be sold to another company. Thomas C. Brown (Thomas), Maurice's stepson and Virginia's son, represented Petroleum Resources in the matter. Maurice died on January 11, 1989. The Brown children did not learn of the release until after Maurice's death.

After Maurice's death, UMB determined that Virginia should receive $570,000 per year to maintain her lifestyle. Due to the mix of assets in the trust, however, the trust generated income in the first three years after Maurice's death of $900,000, $800,000, and $700,000, which was paid to Virginia. UMB also sold the notes in the trust account to a subsidiary of Petroleum Resources for $450,000.

Maurice's children brought this action in the district court, alleging that: UMB breached a fiduciary duty by failing to follow reasonable practices to preserve the value of the Petroleum Resources notes (Count I); UMB breached a fiduciary duty in administering the trusts (Count II); Thomas Brown committed fraud

by inducing Maurice Brown to release the trust assets (Count III); and Thomas Brown knowingly participated in a breach of fiduciary duty by forcing UMB to sell the promissory notes for an unreasonably low price (Count IV).

The district court struck the Brown children's jury demand on Counts I, II, and IV, finding that claims against a trustee for breach of fiduciary duty are equitable and therefore not triable to a jury, and that Count IV against Thomas was dependent on the equitable claims against UMB. The district court then granted summary judgment to UMB and Thomas on Counts I and III, finding that both counts were dependent upon Maurice's competency at the time he signed the release and that the Brown children had not raised a genuine issue of material fact on the issue. The court also excluded from evidence the transcript of taped telephone conversations between one of the Brown children and UMB employees.

Finally, the district court granted JAML to UMB and Thomas on the remaining claims following the parties' opening statements. The court found that the Brown children did not demonstrate that they would be able to show that UMB abused its discretion or acted in anything other than a prudent manner with respect to the sale of the Petroleum Resources notes or to the debt/equity mix of the trust. The court then found that because the Brown children could not show that UMB breached its fiduciary duty, there was no basis for finding that Thomas participated in the breach. In the alternative, the court found that the Brown children did not "offer even a scintilla of proof that such a breach was improperly prompted by Thomas Brown."

## II.

We will first address the counts of the complaint dependent upon Maurice's competency. The district court granted summary judgment on Counts I and III because it found that Maurice was

-3-

competent to sign the release and that thus the claims based on the release must fail. We review the district court's grant of summary judgment de novo, and we will affirm if the evidence, viewed in the light most favorable to the non-moving party, shows that no dispute of material fact exists and that the moving party is entitled to judgment as a matter of law. Michalski v. Bank of America Ariz., 66 F.3d 993, 995 (8th Cir. 1995). Because this is a diversity case, we also review de novo the district court's interpretation of state law. Id. (citing Salve Regina College v. Russell, 499 U.S. 225, 231 (1991)).

Under Missouri law, a person is incompetent to contract if he does not have "sufficient mental capacity to understand the nature and effect of the particular transaction." McElroy v. Mathews, 263 S.W.2d 1, 10 (Mo. 1953). Because two cases are rarely even substantially the same, each case must be decided on its own facts. Peterein v. Peterein, 408 S.W.2d 809, 814 (Mo. 1966). Evidence of the person's mental condition before and after execution can be sufficient if it provides a reasonable inference of incompetency at the time of execution. Estate of Brown v. Brown, 722 S.W.2d 345, 347 (Mo. Ct. App. 1987).

UMB and Thomas submitted the affidavits of four witnesses to the effect that Maurice was alert and aware and that he appeared to understand what was going on at the December 13 meeting when he released the collateral for the promissory notes. UMB and Thomas also submitted the affidavit of the nurse who cared for Maurice, who attested that he was clear and alert both before and after the meeting. The Brown children challenge the impartiality and/or credibility of the witnesses, noting specifically that: Thomas benefitted from the deal, as he had an interest in Petroleum Resources; Connie Rolan, as Thomas's legal assistant, was an interested party; Christopher Glenn, as Thomas's brother-in-law, was an interested party; and Judith Wimmer, Maurice's secretary, "was very close with Virginia" and was previously employed by

-4-

Glenn's company, and thus was an interested party. Mary Lou Pullen, Maurice's nurse, attested only that she was instructed to withhold Roxanol when Maurice needed to conduct business--not that she actually withheld the medication. Pullen's daily notes confirm that she gave Maurice Roxanol at 9:50 a.m., 12:50 p.m., and 3:45 p.m. on the day of the meeting, and her notes also confirm that on that same day Maurice suffered from hallucinations, believing that his friends were tied up in the garage.

The Brown children also point out that Maurice did not have legal representation at the meeting, that he did not follow his usual practice of informing his family members of the transaction he was contemplating, that he could have been confused into thinking that Thomas and Glenn were on his side, and that he signed the document with an unrecognizable scrawl.[1] The district court did not hear live witness testimony on the competency issue, but instead granted summary judgment to UMB and Thomas on the basis of the affidavits.

We conclude that the Brown children submitted sufficient evidence to raise a factual question as to whether Maurice was competent to release the collateral. Thus, summary judgment should not have been granted on the two counts dependent upon Maurice's incompetence.

**III.**

We next address the breach of fiduciary duty claims. The district court granted JAML on Counts II and IV, finding that UMB

---

[1]The district court did not consider the affidavit of Dr. Stephen Williamson, who reviewed Maurice Brown's records and stated that he had serious questions about Maurice's competence to make important business decisions on December 13. The court stated that because Dr. Williamson did not examine or treat Maurice Brown, his affidavit was speculative.

did not breach its fiduciary duty and that thus neither UMB nor Thomas could be held liable.  The Brown children argue that UMB breached its fiduciary duty in several ways, including:  by overpaying Virginia about $700,000 in three years, which reduced the value of the QTIP trust assets to their detriment; by selling the Petroleum Resources notes for an unreasonably low price under pressure from Virginia, Thomas, and Petroleum Resources and by not obtaining substitute collateral for the notes; by failing to dispose of real estate in  a prudent manner; and by charging improper attorney's fees to the trust.

We review a district court's grant of JAML de novo, resolving all doubts in favor of the nonmoving party and giving him the benefit of all reasonable inferences.  Harvey v. Wal-Mart Stores, Inc., 33 F.3d 969, 970 (8th Cir. 1994).  A district court should grant JAML following opening statements only in rare circumstances, exercising great restraint if there is any doubt as to the propriety of such a judgment.  See Morfeld v. Kehm, 803 F.2d 1452, 1454 (8th Cir. 1986).  The Brown children were not required to set forth all of their evidence in the opening statement; the purpose of their opening statement was simply to provide a general summary of what the case was about.  See id. at 1455 n.3.

Because there was a standard by which the reasonableness of UMB's actions could be tested, the court needed to determine whether UMB exercised reasonable judgment in choosing the debt/equity mix of the trust account.  See In re Heisserer, 797 S.W.2d 864, 870-71 (Mo. Ct. App. 1990).  Based on the evidence that the Brown children proposed to admit, we believe a jury could reasonably find that UMB manipulated the investment mix to overpay Virginia at the expense of the remaindermen and that UMB's actions in allowing the overpayment were unreasonable.

Factual issues also remained as to whether UMB acted unreasonably in selling for $450,000 promissory notes on which

principal and interest due exceeded $4.5 million. Although the sale price was within the range of the most recent appraisal, previous appraisals were higher, and UMB did not retain a broker or market the notes before selling them back to a subsidiary of Petroleum Resources. The district court impermissibly relied on factual assertions by UMB and Thomas that were not admitted by the Brown children in finding that the price for the notes was reasonable. The Brown children should also be allowed to put forth their evidence that UMB failed to dispose of real estate in a prudent manner and charged the trust for improper attorney's fees.

The district court found that because UMB did not breach its fiduciary duty, Thomas could not be liable for conspiring to breach the fiduciary duty. Alternatively, the court found that the Brown children did not offer proof that Thomas induced the breach. Because we have found that UMB may be liable for a breach of fiduciary duty, the claim against Thomas Brown cannot be dismissed on the first ground. In addition, the Brown children stated that they would offer evidence that Thomas used the threat of a lawsuit to induce UMB to sell the promissory notes for what he knew was an unreasonably low price to a company in which Thomas himself had an interest. We believe such allegations could state a claim under Missouri law for inducement to breach a fiduciary duty. See Massie v. Barth, 634 S.W.2d 208, 211 (Mo. Ct. App. 1982) (third party liable for loss if on notice of and participates in trustee's breach of trust). (We deny Thomas's motion to strike portions of the Brown children's reply brief addressing this claim, or in the alternative to file a sur-reply brief, as the Brown children sufficiently argued their claims against Brown in their opening brief and responded to Thomas's arguments in their reply brief.)

**IV.**

Whether a party is entitled to a jury trial is a legal question that we review de novo. Pandazides v. Virginia Bd. of

-7-

<u>Educ.</u>, 13 F.3d 823, 827 (4th Cir. 1994).  Courts of equity generally have exclusive jurisdiction over actions against a trustee for breach of trust, as they are equitable actions.  <u>See</u> <u>Mertens v. Hewitt Assocs.</u>, 113 S. Ct. 2063, 2068 (1993).  Such actions are legal and not equitable, however, if the beneficiaries are entitled to recover money arising out of a breach of trust directly upon obtaining a judgment against the trustee.  <u>See</u> Restatement (Second) of Trusts § 198(1) (1959); <u>Snook v. Trust Co. of Georgia Bank of Savannah, N.A.</u>, 909 F.2d 480, 486-87 (11th Cir. 1990).  An action for damages for a breach of trust, as distinguished from an indebtedness arising out of a breach of trust, remains an equitable action.  <u>See</u> Restatement (Second) of Trusts § 198(1) cmt. e (1959).

The Brown children contend that because they are entitled to immediate payment of the trust proceeds upon a finding that UMB breached its fiduciary duty, their action is triable to a jury.  Because the Brown children are not immediately entitled to any proceeds from the QTIP trust, their claims regarding that trust are equitable and are thus not triable to a jury.  As to the residual trust, the Brown children's claims regarding UMB's mishandling of the promissory notes and real estate are also equitable claims, as those claims are for damages, rather than for an indebtedness arising out of a breach of trust.  The only legal claim the Brown children have stated against UMB is that UMB charged the residual trust for inappropriate attorney's fees.  This claim against UMB is triable to a jury.

The Brown children's claim against Thomas for inducing Maurice to release the trust assets is a legal claim triable to a jury.  The claim that Thomas participated in a breach of fiduciary duty is also a legal claim triable to a jury.  Although the court's determination of whether a breach occurred may determine the outcome of the issue, it is for the jury to determine whether Thomas induced the breach if it did occur.

**V.**

A district court's decision regarding the admission of evidence is committed to its sound discretion and will not be disturbed absent an abuse of discretion. <u>McGautha v. Jackson County, Mo. Collections Dep't</u>, 36 F.3d 53, 57 (8th Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 2561 (1995). Without belaboring the particulars of the circumstances under which they were recorded, we conclude that the district court did not abuse its discretion in ruling inadmissible transcripts of telephone conversations between Jonathan Brown and certain of UMB's employees and agents.

We deny the Brown children's motion to remand the case to a different judge. We will take such an action only where the district court has exercised "`such a high degree of favoritism or antagonism as to make fair judgment impossible.'" <u>Hunter v. Delo</u>, 62 F.3d 271, 276 (8th Cir. 1995) (quoting <u>Liteky v. United States</u>, 114 S. Ct. 1147, 1157 (1994)). Although there were exchanges between the district court and counsel for the Brown children that manifested the district court's impatience with counsel and its skepticism about the bona fides of the action, we do not believe that they manifest the degree of favoritism or antagonism that would make fair judgment impossible in the context in which this case will proceed on remand.

The judgment is reversed and the case is remanded to the district court for trial.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.