No. 95-2541

United States of America,       \*

                     \*

       Appellee,      \*

                     \*    Appeal from the United States

   v.                 \*    District Court for the

                     \*    Western District of Missouri.

Green Acres Enterprises, Inc.;  \*

W. R. Jenkins, Sr.,       \*

                     \*

       Appellants.     \*

Submitted: January 8, 1996

Filed: June 12, 1996

Before WOLLMAN, CAMPBELL,[\*] and MURPHY, Circuit Judges.

WOLLMAN, Circuit Judge.

Green Acres Enterprises, Inc. and W.K. and M. Earline Jenkins (collectively the landowners) appeal the district court's grant of summary judgment and injunctive relief for the United States (the government), which barred them from repairing levees on their land and enjoined them from denying government agents from entering their land to inspect the levees and surrounding areas. We reverse and remand with directions to vacate the injunction and to grant judgment to the landowners.

**I.**

In 1976 and 1977, the government bought easements on two farms giving the government the right "occasionally to overflow,

_____

\*The HONORABLE LEVIN H. CAMPBELL, United States Circuit Judge for the First Circuit, sitting by designation.

flood and submerge [the land] . . . in connection with the operation and maintenance of the Harry S. Truman Dam and Reservoir Project."  The tracts of land are along the Marmaton River in Bates County, Missouri.  One tract of land is owned by Green Acres Enterprises, Inc. (Green Acres), and the other tract of land was purchased in 1978 by W.K. and M. Earline Jenkins (the Jenkins) from Richter Farm Associates.  Robert Jenkins, the Jenkins's son, now manages both farms.

The relevant parts of the easements on both tracts of land are identical.  They provide that the landowner retains the right "to use and maintain the levee(s)," subject to the government's right to destroy the levees, provided that if the levees are destroyed, the landowners may restore them "to the present existing height and alinement" upon written authorization from the District Engineer.  The contracts also give the landowners the right to excavate without consent for the purpose of maintaining the levees at their "present height and alinement."  In addition, the easement provided that the United States would acquire title to any "buildings and improvements" on the land that were not removed by November 30, 1978.

The flooding of 1993 destroyed parts of the levees on the two tracts of land.  Robert Jenkins made repairs to the damaged sections of the Green Acres tract and planned to make similar repairs to the Jenkins tract.  On July 21, 1994, the government filed an action to enjoin Green Acres from repairing its levee without prior written authorization from the United States Army Corps of Engineers.  The Jenkins were subsequently added as parties.  The government claimed that its flowage easements prohibited any levee repairs without the Corps' prior consent.  The district court granted a preliminary injunction enjoining the landowners from conducting further activity to repair or reconstruct the levees and from denying access to the Corps upon reasonable notice for inspection of the areas subject to the

injunction. The parties then filed cross-motions for summary judgment. The district court granted the government's motion, making the injunction permanent.

The landowners argue on appeal that the district court erred in granting the injunction because the government offered no evidence that it would suffer irreparable harm if the repairs were made, the contract did not bar the landowners from making the repairs, and the District Engineer had authorized them to make the repairs.

**II.**

We review the district court's grant of a permanent injunction for an abuse of discretion. See Taylor Bay Protective Ass'n v. Administrator, United States EPA, 884 F.2d 1073, 1079 (8th Cir. 1989). In order for a district court to grant a permanent injunction, the plaintiff must show that he will suffer irreparable harm if the injunction is not granted. See Amoco Prod. Co. v. Village of Gambell, Alaska, 480 U.S. 531, 546 n.12 (1987) (standard for preliminary and permanent injunction essentially the same, except for permanent injunction plaintiff must show actual success on the merits); Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc) (irreparable harm is element of preliminary injunction); see also National Football League v. McBee & Bruno's, Inc., 792 F.2d 726, 733 (8th Cir. 1986).

Although the government has vigorously asserted, both in the court below and on appeal, that this is not a Clean Water Act case but is instead an action for breach of contract, the only irreparable harm the government has asserted is the landowners' alleged violation of the Clean Water Act, 33 U.S.C. § 1251 et seq. The government has, however, refused to address any of the landowners' arguments that their actions do not violate the Clean Water Act. The government cannot have it both ways. If the action

is a contract action, the irreparable harm that it asserts must be related to the contract.  See, e.g. National Football League, 792 F.2d at 733 (injury that had "never been the focus of" the lawsuit was insufficient to find irreparable harm).  Because the purpose of the contract was to control flooding in the area, the government must assert irreparable harm that is connected to flood control.  The record before us contains no allegation that other land will be damaged if the landowners repair the levees.  Thus, we find no irreparable harm.

The government cites cases for the proposition that "when the actions to be enjoined are clearly against the public interest, no more showing of irreparable harm or balance of harms is necessary."  Those cases are inapposite, however, since the government has not shown that the landowners' actions are clearly against the public interest.  Moreover, it has not allowed the landowners to dispute whether they are violating the Clean Water Act.  If the government wishes to bring an action for a violation of the Clean Water Act, it may of course do so, but it must allow the landowners the benefit of a defense.

**III.**

We turn, then, to the merits of the district court's grant of summary judgment to the government.  We review de novo a district court's grant of summary judgment, and we will affirm only if the evidence, viewed in the light most favorable to the landowners, shows that no dispute of material fact exists and that the government is entitled to judgment as a matter of law.  See Brown v. United Missouri Bank, N.A., 78 F.3d 382, 386 (8th Cir. 1996).  We also review the district court's interpretation of state law de novo.  Id. (citing Salve Regina College v. Russell, 499 U.S. 225, 231 (1991)).

The parties agree that Missouri law governs the contract claim. Under Missouri law, the court must first determine as a matter of law whether a contract is ambiguous. Royal Banks v. Fridkin, 819 S.W.2d 359, 361 (Mo. 1991) (en banc). In determining whether the language of a contract is ambiguous, we give the words their natural and ordinary meaning. J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club, 491 S.W.2d 261, 264 (Mo. 1973) (en banc). A contract is ambiguous if reasonable minds could fairly and honestly differ in their construction of its terms, Kingston Elec., Inc. v. Wal-Mart Properties, Inc., 901 S.W.2d 260, 263 (Mo. Ct. App. 1995), considering the whole instrument in making the determination, Automobile Ins. Co. v. United H.R.B. Gen. Contractors, Inc., 876 S.W.2d 791, 793 (Mo. Ct. App. 1994).

The easement contracts provide that the landowners retain:

[1] the right and privilege at the owner's expense to use and maintain the levee(s) . . . [2] provided, however, that the aforesaid privilege of use and maintenance shall be totally subordinate to the absolute right of the United States, without notice and without incurring liability of any nature, whatsoever, to remove, breach, flood or otherwise damage or destroy in any manner whatsoever, the said levee(s) . . . [3] provided, however, if the levee(s) is removed, breached, flooded, or otherwise damaged or destroyed and the owner or its successors and assigns desires to reconstruct, repair, or otherwise restore said levee(s) to the present existing height and alinement he may do so at his expense, provided that he has obtained prior written authorization from the District Engineer.

The easement also provides that the landowner may not excavate on the land without approval, unless "required for normal use and maintenance of said levee(s) at its present height and alinement."

The landowners contend that the right to maintain the levees, as provided in the first clause, includes the right to repair breaches in the levees caused by floods and that written authorization for repairs, as provided in the third clause, becomes

necessary only when the government has destroyed the levees. The government contends that the right to maintain the levees does not include the right to repair the levees. Further, the government argues that there is no difference between the government's actively destroying the levees or allowing them to be destroyed by floods, with the result that prior written authorization for the repairs is required. The district court agreed with the government that the right to maintain the levees did not include the right to repair the flood damage.

We disagree with the district court's interpretation of the contract language, and we find that the unambiguous language makes clear that the right to maintain the levees includes the right to repair breaches in the levees caused by floods. To "maintain" means to perform "acts of repairs and other acts to prevent decline, lapse, or cessation from existing state or condition." Black's Law Dictionary 953 (6th ed. 1990). Repairing breaches in the levees is an act of maintaining the levees in their pre-existing state by preventing decline in their condition. Maintenance presupposes that some damage has occurred, and the government's implicit argument that too much damage had occurred here to label the repairs maintenance would require us to determine exactly how much damage must occur before a repair is no longer maintenance. We decline to interpret "maintenance" to require such a determination. The easement contract itself assumes that excavation is necessary to maintain the levees at their "present height and alinement."

We find support for our position in a decision by the United States Claims Court concerning an easement contract identical in its relevant aspects, which was also for the operation of the Harry S. Truman Dam. See Hendricks v. United States, 14 Cl. Ct. 143 (1987). In Hendricks, the landowners brought an action against the government for taking their land without just compensation, claiming the land was flooded to such an extent that it had no

economic value.  As one of the bases for its finding that no taking had occurred, the court found that the Hendricks were partially responsible for the flooding because they did not properly maintain the levee.  Id. at 153.  The court stated that "[p]roper levee maintenance entails more than merely pushing dirt into a breach to keep some water out."  Id.

The government argues that the repairs cannot be a part of maintenance because the third clause of the contract states that the landowners may repair the levees only with written consent of the District Engineer.  Reading the contract as a whole, however, we find that the third clause is merely a proviso to the second clause, which allows the government to "remove, breach, flood or otherwise damage or destroy" the levees.  The third clause uses the same language in requiring consent for repairs, stating that such repairs are allowed if the levee is "removed, breached, flooded, or otherwise damaged or destroyed."  We conclude, therefore, that consent to repair is required only in those cases in which the damage to the levees has occurred as a result of the government's exercise of the rights retained by it under the second clause.  This is not to say, although we need not decide, that the proper exercise of those rights could never include preventing the rebuilding of a naturally-destroyed levee.

The government's rights under the second clause, however, are dependent upon the stated purpose of the contract:  to flood the land "in connection with the operation and maintenance of the Harry S. Truman Dam and Reservoir Project."  The government has not asserted, nor have we found in the record, a flood control purpose in refusing to allow repairs to the levees.

The government argues that it owns the levees under the clause of the easement giving it title to "buildings and improvements" on the land not removed by November 30, 1978, and that thus it may do whatever it pleases to the levees.  Whether or not the government

owns the levees is immaterial, as the contract provides the landowners with the right to maintain the levees regardless of ownership.

Because we find that the landowners did not need to obtain consent to repair the levees, we need not address their argument that they had obtained consent from the District Engineer prior to making the repairs.

**IV.**

The judgment is reversed, and the case is remanded to the district court with directions to vacate the injunction and enter judgment in favor of the landowners.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.